**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| REDDING RANCHERIA,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>SALLY JEWELL, in her official capacity as Secretary of the United States Department of the interior; KEVIN K. WASHBURN, in his official capacity as the Assistant Secretary for Indian Affairs for the United States Department of the Interior,[*]<br>*Defendants-Appellees*. | No. 12-15817<br><br>D.C. No.<br>3:11-cv-01493-SC<br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Samuel Conti, Senior District Judge, Presiding

Argued and Submitted
April 8, 2014—San Francisco, California

Filed January 20, 2015

Before: Mary M. Schroeder, Kermit Victor Lipez[**],
and Consuelo M. Callahan, Circuit Judges.

---

[*] Sally Jewell and Kevin K. Washburn are substituted for their predecessors pursuant to Fed. R. App. P. 43(c)(2).

[**] The Honorable Kermit Victor Lipez, Senior United States Circuit Judge for the First Circuit, sitting by designation.

Opinion by Judge Schroeder;
Partial Concurrence and Partial Dissent by Judge Callahan

**SUMMARY**[***]

### **Tribal Matters**

The panel affirmed the district court's judgment in favor of the federal government insofar as it upheld the Secretary of the Interior's denial of the application of Redding Rancheria (the Tribe) to operate multiple casinos on restored lands, and reversed in part and remanded to the agency for consideration of the Tribe's proposal to close its existing Tribal gaming operation upon construction of a new facility.

The Secretary denied the Tribe's request to take into trust a substantial parcel the Tribe recently acquired for the construction and operation of a new gambling casino. The Indian Gaming Regulatory Act generally banned gaming on lands that tribes acquired after its enactment in 1988, but created an exception for tribes with restored lands. The agency denied the Tribe's application because, at the time it was submitted, the Tribe was operating a modest casino on land it acquired earlier. The district court granted summary judgment to the government because the Tribe was seeking to operate multiple casinos, which the applicable regulations sought to prevent. While the application was pending, the Tribe advised the agency that it was willing to close down its original casino once the new one was in operation.

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the regulation at issue was reasonable, and the Secretary reasonably implemented the restored lands exception. The panel further held that the Indian canon (which provides that where a statute is unclear, it must be liberally interpreted in favor of Indians) did not apply in the circumstances of this case. The panel also held that the Secretary's denial of the Tribe's application was not inconsistent with prior agency practice, and was not arbitrary and capricious.

The panel held that the agency should have considered the Tribe's alternative offer to move all gaming to the new casino, and vacated in part the district court's summary judgment with instructions to remand to the agency to address the issue.

Judge Callahan concurred in parts I, II, and III of the majority's opinion; and agreed that the regulation at issue was reasonable, the Indian canon did not apply, and there was no unexplained change in agency policy. Judge Callahan dissented from part IV of the opinion because the Tribe did not fairly prompt the Secretary to consider its alleged offer to move its casino and did not ask the district court to consider the alleged offer to remove the casino. Judge Callahan would not reverse in part and remand for further consideration.

## COUNSEL

Scott D. Crowell (argued) and Scott Wheat, Crowell Law Offices, Spokane, Washington, for Plaintiff-Appellant Redding Rancheria.

Ignacia S. Moreno, Assistant Attorney General, Matthew Marinelli and Lane N. McFadden (argued), Attorneys, United States Department of Justice, Environment & Natural Resources Division, Washington, D.C., for Defendants-Appellees Sally Jewell, Secretary of the Department of the Interior and Kevin K. Washburn, Assistant Secretary for Indian Affairs.

George Forman and Jay B. Shapiro, Forman & Associates, San Rafael, California, for Amicus Curiae Robinson Rancheria of Pomo Indians.

## OPINION

SCHROEDER, Senior Circuit Judge:

The Redding Rancheria ("the Tribe") is a very small Indian tribe trying to restore the Reservation that was taken away by the United States during the mid-Twentieth century era of assimilation. *See City of Roseville v. Norton*, 348 F.3d 1020, 1022 (D.C. Cir. 2003); *see also* William C. Canby, American Indian Law in a Nutshell 27–30 (5th ed. 2009) (describing the federal government's general policy of terminating tribal recognition in order to assimilate Indian populations); Felix S. Cohen, Federal Indian Law §1.06 (2005) (noting that, starting in the 1950s, the federal government began an official "policy of rapid assimilation

through termination"). The Tribe also wishes to establish a successful gaming operation on its land. For that purpose, it has asked the Department of the Interior to take into trust a substantial parcel the Tribe recently acquired for the construction and operation of a new gambling casino. The Secretary of the Interior ("Secretary") denied the request.

The Indian Gaming Regulatory Act ("IGRA") generally bans gaming on lands that tribes acquire after its enactment in 1988, but creates an exception for tribes with restored lands. 25 U.S.C. § 2719. This case concerns the regulations the Secretary of the Interior has promulgated to define and place reasonable limits on the restored lands exception. The agency found the Tribe's application did not qualify because, at the time it was submitted, the Tribe was operating a modest casino on land that it acquired earlier. The district court granted summary judgment for the government because the Tribe was seeking to operate multiple casinos, something the applicable regulations unquestionably and reasonably are intended to prevent. While the application was pending before the agency, however, the Tribe advised the agency that it was willing to close down its original casino once the new one was in operation. The agency did not meaningfully address the Tribe's alternative position. We remand to the agency so that it can do so.

**FACTS**

The Redding Rancheria was first recognized by the United States in 1922, with a reservation of about 30 acres located in rural Northern California. In 1965, however, it was stripped of its federal recognition pursuant to the California Rancheria Act, Pub. L. No. 85-671, 72 Stat. 619 (1958). The act was part of a general effort to assimilate Indians into

American society.  *See City of Roseville*, 348 F.3d at 1022. The Tribe eventually joined other California tribes in bringing suit against the United States, *see Hardwick v. United States*, No. C-79-1710 (N.D. Cal. Dec. 22, 1983), and as part of a resulting settlement, tribal federal recognition was restored in 1984.

The Tribe then embarked on a series of acquisitions to restore lands to its reservation, and, per its request, each has been taken into trust by the United States, for a total of about 8.5 acres.  Roughly 2.3 acres were taken into trust for individual tribe members as part of the settlement agreement in *Hardwick*.  The United States accepted the Tribe's trust-to-trust transfer request for these parcels in 1992, and the Tribe began operating a small casino, known as the Win-River Casino, on the 2.3 acre parcel after entering into a gaming compact with the state of California in 1999.  The Tribe has since submitted several additional land requests.  The first, begun in 1996, was for a Head Start facility, and the application was not completed and accepted until 2009. Another application, submitted in 2000 and also accepted in 2009, was for a burial ground of .5 acres.  In 2010, an application for administrative buildings was accepted. According to the Tribe, its land restoration efforts have often been hampered by lack of funds and the unavailability of nearby land.

In 2003, the Tribe submitted a request to the Department of the Interior to take into trust an additional 152 acres ("the Strawberry Fields"), so the Tribe could construct another casino.  After the Tribe submitted a completed application on December 22, 2008, it amended the application in July of 2010 to include an additional 80 acres.  Shortly before the Secretary denied the application, the Tribe wrote a letter to

the agency, dated December 14, 2010, stating the Tribe was willing to close its current gaming facilities once its new facility was built. The Secretary denied the Tribe's application on December 22, 2010, finding that, under the applicable regulations, the Tribe could not conduct gaming on newly acquired lands because it was already gaming on other lands.

The key statute governing the Tribe's gaming activities is the portion of IGRA that covers "restored" tribes. Congress passed IGRA in 1988 "as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments." 25 U.S.C. § 2702. IGRA permits Indian tribes to conduct gaming on tribal lands subject to certain limitations. Section 2719(a) prohibits tribes from gaming on lands taken into trust after IGRA's 1988 passage date, but that section includes Exemptions and Exceptions. Of relevance is section 2719(b)(1)(B), which allows restored tribes to game on any land taken into trust as part of a "restoration of lands" (the "restored lands exception"). There is no dispute that the Tribe is a "restored tribe" within the meaning of the statute. The issue is whether the land in question is "restored land."

To define and place reasonable limits on the exceptions, the Secretary of the Interior, in 2008, promulgated a series of rules implementing section 2719 of IGRA. 25 C.F.R. § 292.1. The purpose of these rules was to "explain to the public how the Department interprets" IGRA's various exceptions and exemptions, including the restored lands exception. 73 Fed. Reg. 29,354. Under the Secretary's interpretation, lands qualify as "restored" and can thus be used for gaming purposes only if the tribe establishes a sufficient relationship to the land in what the regulations term

"modern," "historical," and "temporal" connections to the Tribe's original land. 25 C.F.R. § 292.12. At issue here is only the temporal connection. A tribe can demonstrate a "temporal" connection in one of two ways:

> (1) The land is included in the tribe's first request for newly acquired lands since the tribe was restored to Federal recognition; or

> (2) The tribe submitted an application to take the land into trust within 25 years after the tribe was restored to Federal recognition *and the tribe is not gaming on other lands*.

25 C.F.R. § 292.12(c) (emphasis added). The Strawberry Fields were not included in the Tribe's first request for newly acquired lands, so subsection (1) does not apply. The application was filed within 25 years of recognition, but because of the last proviso of subsection (2), the Win-River Casino became the stumbling block. The Tribe was operating a casino on other lands.

The application remained pending for more than seven years. Then the Tribe, on December 14, 2010, wrote to the Secretary to advise that it would close the Win-River Casino when the new casino was completed. Eight days later, the Secretary denied the application, stating that "[b]ecause the Tribe cannot meet the standards articulated in Section 292, the Parcels are not eligible for the restored lands exception." The denial did not address the Tribe's December 14 letter proposing to close the Win-River Casino.

The Tribe then brought suit in the Northern District of California, challenging the Secretary's determination that the Strawberry Fields are not covered by the restored lands exception. The Tribe argued that the regulation's limitation on operating a second casino was unreasonable. The court granted summary judgment in favor of the Secretary, concluding that the Secretary had the power to promulgate regulations under IGRA, that the Secretary's interpretation of the restored lands exception was reasonable, and that the Secretary did not act arbitrarily and capriciously in denying the Tribe's request to operate two casinos, but did not address the Tribe's alternative proposal to close the first casino once the new one was operational.

The Tribe now appeals. It contends that the regulations are arbitrary and capricious in limiting tribes to one casino on restored lands. It further contends that, even if the limitation is reasonable, the Secretary was arbitrary and capricious in denying its application even though it had offered to close the first casino so that the application would not result in more than one casino. We uphold the reasonableness of the regulation itself, but direct the agency to consider whether the regulation bars the Tribe's moving its casino operation from the old casino to a new one.

## DISCUSSION

### I. The Regulation is Reasonable

In promulgating the regulation at issue here, the Secretary was implementing the restored lands exception to the general statutory ban on tribes using land acquired after IGRA for gaming. The restored lands exception therefore must be read in the context of IGRA's general prohibition against gaming

on lands acquired after 1988. The exception was not intended to give restored tribes an open-ended license to game on newly acquired lands. Rather, its purpose was to promote parity between established tribes, which had substantial land holdings at the time of IGRA's passage, and restored tribes, which did not. *See City of Roseville*, 348 F.3d at 1030. In administering the restored lands exception, the Secretary needs to ensure that tribes do not take advantage of the exception to expand gaming operations unduly and to the detriment of other tribes' gaming operations.

To that end, the Secretary promulgated a series of requirements a tribe must satisfy in order to demonstrate that newly acquired lands are part of the effort to restore a reservation and are therefore eligible for gaming. To benefit from the restored lands exception, a tribe must establish a "modern," "historical," and "temporal" connection to tribal land. 25 C.F.R. § 292.12. Because these factors are general, the regulation further defines each.

The "modern" connection means that the land is within the state or states in which the tribe is currently located and is, by at least one of several measures prescribed by the regulation, in close proximity to the tribe's other lands. 25 C.F.R. § 292.12(a). The Secretary concluded that the Tribe satisfied this requirement. The Secretary also concluded that the Tribe satisfied the "historical" connection under 25 C.F.R. § 292.12(b) because the land in question is next to historic lands.

In order to establish a "temporal connection," the tribe must demonstrate either (1) that the land was part of the tribe's first request for newly acquired lands after being restored to federal recognition, or (2) that it submitted an

application to take the land into trust within 25 years after being restored, and that it is not currently gaming on other lands. *Id.* § 292.12(c). As the Secretary stated in the preamble to 25 C.F.R. § 212(c), "the temporal limitation effectuates IGRA's balancing of the gaming interests of newly acknowledged and/or restored tribes with the interests of nearby tribes and the surrounding community." 73 Fed. Reg. 29,367.

In this way, the regulation strikes a balance between allowing restored tribes to game on newly acquired lands, while at the same time protecting the interests of established tribes. Section 292.12(c) allows a tribe to game on any lands that were acquired as part of its first request for lands after regaining federal recognition, but it limits gaming on lands acquired as part of subsequent requests. After a tribe's first request for land is granted, it can only game on newly acquired lands if it requests that these lands be taken into trust within 25 years of restoration, and it is not already gaming elsewhere. 25 C.F.R. § 292.12(c)(2). As a result, once a restored tribe builds a casino, it cannot build additional casinos on newly acquired lands. Without this limitation, restored tribes would be able to expand their gaming operations indefinitely. This would give them an unfair advantage over established tribes who generally cannot game on any lands acquired after IGRA was passed. 25 U.S.C. § 2719(a).

The Tribe contends that the limitation is nonetheless unreasonable because it is not contained in the statute. The statute, of course, merely creates an exception for restored lands, without attempting to define the term or dictate how it should be administered. Congress authorized the Secretary to promulgate regulations to achieve those purposes, as is

standard practice in today's understanding of administrative law. Thus an agency charged with administering a statute has the power to make rules "to fill any gap left, implicitly or explicitly, by Congress." *Morton v. Ruiz*, 415 U.S. 199, 231 (1974).

The Administrative Procedure Act accordingly sets forth procedures by which agencies promulgate rules "to implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4). When an agency uses this rule making authority to define a general or ambiguous provision of a statute, its interpretation is owed deference so long as it is reasonable. *United States v. Mead Corp.*, 533 U.S. 218, 229 (2001) (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 845 (1984)).

We conclude that the Secretary reasonably implemented the restored lands exception, to limit the extent to which a restored tribe may operate gaming facilities on restored land, in order to ensure parity between restored and established tribes. There is nothing unreasonable about the regulation's intent to prevent restored tribes from acquiring additional land to operate multiple gaming operations.

## II. The Indian Canon Does Not Apply

In Indian law there is a canon that, where a statute is not clear, it must be interpreted liberally in favor of Indians. This canon was most recently articulated by the Supreme Court in *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985). The Tribe therefore asserts that even if the regulation could be viewed as reasonable, the *Blackfeet* presumption precludes the Secretary from prohibiting additional gaming on restored lands.

The Tribe points out that no such "numerical limitation" is clearly expressed within the language of the statute. *See* 25 U.S.C. § 2719(b)(1)(B)(iii). The Tribe's position is that, because the limitation is contrary to the interests of the Tribe, we must apply the canon to hold that the numerical limitation violates Congressional purpose. The government, on the other hand, points to a competing presumption of deference to agency interpretation of a statute. *See Chevron*, 467 U.S. at 845.

The Tribe's argument seems foreclosed by precedent in this Circuit. This court has repeatedly "declined to apply [the Indian law canon of construction] in light of competing deference given to an agency charged with the statute's administration." *Haynes v. United States*, 891 F.2d 235, 239 (9th Cir. 1989); *see also Seldovia Native Ass'n, Inc. v. Lujan*, 904 F.2d 1335, 1342 (9th Cir. 1990). We have said this is because the *Blackfeet* presumption is merely a "guideline," whereas "*Chevron* is a substantive rule of law." *Williams v. Babbitt*, 115 F.3d 657, 663 n.5 (9th Cir. 1997). In this circuit, an agency's legal authority to interpret a statute appears to trump any practice of construing ambiguous statutory provisions in favor of Indians.

Even if the *Blackfeet* presumption might be applied in some circumstances in our circuit, however, it would not apply in this case. This is because all tribal interests are not aligned. An interpretation of the restored lands exception that would benefit this particular tribe, by allowing unlimited use of restored land for gaming purposes, would not necessarily benefit other tribes also engaged in gaming. It might well work to their disadvantage.

The canon should not apply in such circumstances.  The canon has been applied only when there is a choice between interpretations that would favor Indians on the one hand and state or private actors on the other.  For example, in *Blackfeet* itself, the Supreme Court applied the canon in a dispute between state and tribal interests, interpreting the 1938 Mineral Leasing Act.  The Court concluded that the statute should not be read to permit the state of Montana to tax Indian royalty income from mineral leases, because the Act did not expressly authorize state taxation of Indian royalty interests.  471 U.S. at 767.  In the absence of such an express authorization, the statute had to be interpreted in favor of the Indians.  This court has explained that the *Blackfeet* presumption does not apply when tribal interests are adverse because "[t]he government owes the same trust duty to all tribes." *Confederated Tribes of Chehalis Indian Reservation v. Washington.*, 96 F.3d 334, 340 (9th Cir. 1996).  It cannot favor one tribe over another.  The district court therefore correctly refused to apply the Indian canon in the circumstances of this case.

## III.     There Has Been No Unexplained Change in Agency Policy

The Tribe argues that the Secretary's denial of its application was inconsistent with prior agency practice and therefore arbitrary and capricious.  The Tribe points to a single past agency decision that permitted the Elk Valley Rancheria to game on restored lands even though it was already gaming on other lands.  The Elk Valley decision was before the promulgation of 25 C.F.R. § 292.12 in 2008 and before the Tribe's application was completed in 2010.

It is not entirely clear that the Elk Valley decision would have been any different under the current regulation. Under the current regulation, a tribe may game on lands provided that they are "included in the tribe's first request for newly acquired lands since the tribe was restored to federal recognition" regardless of whether the tribe is already gaming elsewhere. 25 C.F.R. § 292.12. The administrative decision is a part of our record and states that the lands on which the Elk Valley Rancheria sought to conduct gaming were part of "the first parcels requested by the Tribe to be acquired into trust."

What is more, an agency is permitted to change its policy so long as it provides some minimal explanation for the change. *See Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 493 (9th Cir. 2007). Even assuming the Elk Valley decision was inconsistent with the current regulation and the agency's treatment of the Tribe's application in this case, the agency provided a sufficient explanation for its change of policy. In promulgating 25 C.F.R. §292.12, the agency stated that it wanted to "explain to the public how the Department interprets th[is] exception[ ]." 73 Fed. Reg. 29,354. It further explained, that the temporal requirement was designed to "effectuate[ ] the IGRA's balancing of the gaming interests of . . . restored tribes with the interests of surrounding tribes and the nearby community." *Id.* at 29,367. More extensive explanation was not required. *See Robles-Urrea v. Holder*, 678 F.3d 702, 710 n.6 (9th Cir. 2012) (noting that even a "sparse" explanation suffices).

**IV.     The Agency Should Have Considered the Tribe's Alternative Offer to Move All Gaming to the New Casino**

Once a restored tribe has acquired restored lands, and built a casino, the regulation bars use of subsequent acquisitions to operate additional casinos.  It is undisputed that the Tribe was operating the Win-River Casino when it submitted its application for the new Strawberry Fields casino.  The Tribe's 2008 application thus contemplated the construction of a second casino.  There were apparently discussions between the parties, because in December 2010 the Tribe wrote to the Secretary offering to "memorialize" its intent to move its gaming operations from its current location to the Strawberry Fields.  The Tribe argues that the Secretary, in denying the Tribe's application, arbitrarily failed to consider the Tribe's 2010 representation that it would not operate multiple gaming facilities.  The Secretary denied the Tribe's application without any mention of the Tribe's offer, although the denial emphasized the specific wording of the regulation that conditions the requisite temporal connection on a finding that the tribe "is not gaming on other land." 25 C.F.R. § 292.12(c)(2).  The district court did not consider the Tribe's alternative offer and construed its application as if it necessarily contemplated the operation of multiple casinos.

An agency's decision is arbitrary and capricious if it ignores important considerations or relevant evidence on the record.  *See Port of Seattle, Wash. v. F.E.R.C.*, 499 F.3d 1016, 1035 (9th Cir. 2007) (citing *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  The Secretary did not address the Tribe's willingness to close its current casino in order to move its

gaming operations to one on newly restored lands. The agency now argues, however, that the Secretary's determination was required by the plain meaning of the regulation.

Under 25 C.F.R. § 292.12(c)(2), land is eligible for gaming if the application is submitted within 25 years after the tribe was restored to federal recognition and "the tribe is not gaming on other lands." The regulation thus has both a 25 year deadline and a prohibition against gaming on other lands. The agency must look to the date on which a tribe submits its application to determine whether it has satisfied the 25 year deadline. The regulation is not clear, however, that the agency must also look to the date of the application to determine whether the tribe has satisfied the prohibition against gaming on other lands. While the regulation could be so interpreted, the agency has so far provided no reason why it should. Allowing a restored tribe to move a casino does not appear to conflict with the statutory purpose of ensuring parity among restored and established tribes. Restored tribes, if allowed to operate an indefinite number of casinos on newly restored lands, would of course have an advantage over established tribes, but it is not clear that allowing restored tribes to move a casino to a different location would necessarily have the same effect.

The agency can point out that we generally defer to an agency's interpretation of its own regulation. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997). The administrative proceedings in this case, however, did not address this issue of interpretation, much less provide any reasons for the agency's current position. The agency presented its position for the first time in its brief, and it offered sparse explanation for it. We need not defer to an agency position when taken

for purposes of litigation. *See Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166–67 (2012) (noting that "an interpretation is not owed deference when it is nothing more than a convenient litigating position or a *post hoc* rationalizatio[n] advanced by an agency seeking to defend past agency action against attack.") (internal citations and quotation marks omitted) (alterations in original). The agency's interpretation on the administrative record before us lacks explanation or justification.

In remanding to the agency we expedite the agency's consideration of the Tribe's alternative proposal. We do not tell the agency what to say. While the dissent may speculate on how and why the agency interprets the regulation, the agency has never addressed these issues. We cannot defer to what the agency has not done.

We accordingly vacate in part the district court's grant of summary judgment with instructions to remand to the agency to address whether the Tribe should be permitted to construct a new casino to replace the existing one.

**CONCLUSION**

The judgment of the district court in favor of the government is affirmed insofar as it upholds the Secretary's denial of the Tribe's application to operate multiple casinos on restored lands. The judgment is reversed in part, and the case remanded to the district court with instructions to remand to the agency for consideration of the Tribe's

proposal to close its existing gaming operation upon construction of a new facility.

**AFFIRMED** in part, **REVERSED** and **REMANDED** in part. Each side to bear its own costs.

---

CALLAHAN, Circuit Judge, concurring and dissenting:

I concur in parts I, II and III of the majority's opinion. I agree that the regulation here at issue is reasonable, the Indian canon does not apply, and there has been no unexplained change in agency policy. In other words, I agree that the Secretary reasonably rejected the Tribe's challenges to the underlying regulation. However, I dissent from part IV of the opinion because the Tribe did not fairly prompt the Secretary of the United States Department of Interior ("the Secretary" or "the Department") to consider its alleged offer to move its casino and did not ask the district court to consider the alleged offer to move the casino. Moreover, on this record, there is no basis for suggesting that the such an offer would merit relief under the regulation. Our sympathy for a small, struggling tribe does not justify formalizing a claim that was never clearly presented to the Secretary, was not fairly presented to the district court, and is of questionable merit. Our opinion should conclude this litigation.

## I

As the opinion notes, the Tribe made its application in 2003. The application was supplemented on several occasions, including on December 22, 2008, and on October 29, 2010. There is nothing in either of these detailed

supplements that suggests that the Tribe contemplated closing its Win-River Casino if its application for Strawberry Fields was approved.

Negotiations continued through a meeting in November 15, 2010.  It appears that the possibility that the Tribe might close its Win-River Casino if it were allowed to build a casino on Strawberry Fields was first raised in a letter dated December 14, 2010, from Barbara Murphy, Vice Chairperson, Redding Rancheria, to Del Laverdue, Deputy Assistant Secretary - Indian Affairs, Department of Interior. The letter stated:

> Since our meeting in Albuquerque, the Tribal Council has met and discussed our options with regard to this application, and we are determined to do whatever is necessary to alleviate any concerns you may have about our current landholdings and gaming operation.
>
> Accordingly, while we contend that our existing gaming facility does not preclude us from obtaining a restored lands opinion for Strawberry Fields, I want to personally assure you of our intent to close our existing facility and relocate our gaming operation to the Strawberry Fields property.  Additionally, we are willing to memorialize this intent in an agreement with the Department and look forward to talking to you about [t]his further.

Several features of this letter are relevant.  First, the Tribe continues to press its contention that its "existing gaming

facility does not preclude [it] from obtaining a restored lands opinion for Strawberry Field." Second, the letter offers only the Vice Chairperson's personal assurance of the Tribe's intent to relocate its casino to Strawberry Fields. Third, the letter asserts that the Tribe is "willing to memorialize this intent." Fourth, the Vice Chairperson indicates that she looks forward to talking to the Deputy Assistant Secretary about this matter.

Thus, it is doubtful that the December 14 letter can, or should, be read as conveying a formal offer by the Tribe to close the Win-River Casino once the Strawberry Fields Casino opened. Rather, the Vice-Chairperson offered her personal assurance as to the Tribe's intent and that the Tribe was "willing to memorialize this intent in an agreement." Moreover, the letter does not contain any argument or explanation as to why the Tribe's offer to move its casino might be relevant to the Secretary's consideration of the Tribe's application. Particularly in light of the questionable relevance of this offer to the Secretary's analysis (*see* part III, *infra*), the letter is best understood as an attempt to continue negotiations: an effort to negotiate a last minute deal.

Eight days later, on December 22, 2010, the Secretary of the Interior issued an eight-page, single-spaced decision denying the Tribe's application. A review of the December 22 decision shows that it was carefully crafted and that the preliminary determinations must have been made well before December 14, 2010. In its penultimate section the letter states:

> Whether we consider the Tribe's first request
> for newly acquired lands to be the trust-to-
> trust transfers or the subsequent fee-to-trust

requests, it is evident that the subject Parcels were not included in either of these requests. Therefore, the Parcels were not "included in the [T]ribe's first request for newly acquired lands since the [T]ribe was restored to Federal recognition" and they cannot meet the standard in 25 C. F. R. § 292.12(c)(I).

To meet the alternate standard under 25 C. F. R. § 292.12(c)(2), a tribe must demonstrate that it submitted the land into trust application within 25 years after the tribe was restored to Federal recognition and the tribe is not gaming on other lands.

In this case, the Tribe's existing gaming facility precludes a finding under this section.

Even if the Tribe's letter could be viewed as a plea for the creation of an exception to the requirement that "*the tribe is not gaming on other land*," which is contrary to its natural meaning, *see infra*, the December 14 letter contained no explanation or justification for such a request. Accordingly, as the Tribe's alleged offer to move its casino did not appear to be relevant to the Secretary's decision, the Secretary did not, and should not be required or expected to, address the offer in any detail. Rather, the Secretary succinctly explained that he denied the Tribe's application because of its "existing gaming facility." The offer to move the casino did not change the fact that the Tribe had an existing casino when it submitted its application.

The conclusion that the December 14 letter did not clearly present to the Secretary an alternate proposal of moving the

existing casino is supported by the lack of anything in the record suggesting that the Tribe thought otherwise. There is no indication that the Tribe asked the Secretary to reconsider his decision in light of the December 14 letter. Indeed, the Tribe's complaint filed in the district court does not even mention the December 14, 2010 letter. Paragraph 23 states that the Tribe amended its request on October 29, 2010. Paragraph 24 then states that Department denied the Tribe's request in the December 22, 2010 letter. There is no mention of the November 15, 2010 meeting or Ms. Murphy's December 14, 2010 letter.

The existing record does not support the majority's statement that the Tribe presented the Secretary with an "alternative proposal to close the first casino once the new one was operational." Maj. at 9. Rather, the possibility of moving the casino appears to have been tentatively raised in a last minute letter with no explanation of why the proposal would be permissible under the applicable regulation. The "alternate proposal" was not addressed in the Secretary's decision, and the Tribe never asked the Secretary to reconsider his decision in light of its alleged "alternate proposal." We hold that the Secretary's denial of the application was otherwise reasonable. This decision should not be undermined by subsequent attempts to re-characterize what happened. Because no "alternate proposal" was fairly presented to the Secretary, his failure to address it cannot be described as arbitrary or capricious. Furthermore, if the "alternate proposal" has any merit, the Tribe presumably can raise it anew with the Department. Such a course is surely preferable to remanding this case to the district court, to remand it to the Secretary, to consider a claim that was not fairly raised before the Department.

## II.

Contrary to the majority's opinion and the Tribe's representations in its appellate brief, the district court's 32-page opinion is not based on a misperception that the Tribe sought to operate multiple casinos. As noted, the December 14 letter was not even mentioned in the Tribe's complaint.

Furthermore, a review of the briefs filed in the district court reveals that the alleged "alternate proposal" was never argued in writing to the district court. The December 14 letter is first mentioned in the Tribe's September 30, 2011 Motion for Summary Judgment as "summarizing many of the Tribe's arguments supporting its position that the Property fell within the Restored Lands Exception."[1] However, the thrust of the motion was that "the validity of the Decision . . . depends on the validity of the Regulations."[2]

---

[1] Paragraph 19 in the Motion for Summary Judgement reads:

> On December 14, 2010, the Tribe sent a letter to Mr. Laverdure reiterating the discussions that occurred during the November 15, 2010 meeting, and summarizing many of the Tribe's arguments support its position that the Property fell with the Restored Lands Exception.

[2] The motion stated:

> The Assistant Secretary's Decision that the Tribe's request must be denied was based on the conclusion that the Property did not meet the requirements of the Regulations, in particular 25 C. F. R. §§ 292.2 and 292.7–292.12. The validity of the Decision, therefore depends on the validity of the Regulations.

The motion does contain a section alleging that "the Assistant Secretary's Decision violates the APA because he refused to consider important information and arguments submitted by the tribe." This section does mention the December 14, 2010 letter, but only as supporting the Tribe's argument that "because the lands upon which the Tribe was conducting gaming were within the original boundaries of the Tribe's Reservation, that gaming had no effect on the Tribe's request that the Property be taken into trust pursuant to the Restored Lands Exception." The December 14, 2010 letter does not make an appearance in the Tribe's reply brief.

The only language in the district court's opinion that arguably implies that the district court thought that the Tribe sought to operate multiple casinos is the third sentence in the opinion that reads: "The Tribe seeks to expand its gaming operations by building a second casino on 230 acres of undeveloped riverfront lands." However, this is an accurate statement, even if the Tribe intended to close the Win-River Casino. The Tribe did seek to build a "second" casino. Moreover, the Tribe did intend to expand its operations as the proposed Strawberry Fields Casino would be much larger than the Win-River Casino.

The district court did address the Tribe's claim that the Secretary "refused to consider important information, and found that the Decision was not arbitrary or capricious." The district court concluded that the Secretary had "explained that the Tribe could not satisfy the alternate criterion for establishing a temporal connection to newly acquired lands, which depends on a tribe conducting gaming on no other lands, *see* § 292.12(c)(2), because the tribe already operated the Win-River Casino," and that there was "nothing arbitrary or capricious about this application of the Regulations." The

district court further opined that "[t]he Tribe's real objection to the Decision appears to be not how Interior applied the Regulations but rather that Interior applied them at all."

Thus, the district court held that the Secretary reasonably denied the Tribe's request because the Tribe was already gaming on other land.  The district court did not consider (and apparently was not asked to consider) whether the regulation could, or should be, revised or interpreted to allow the transfer of gaming from one location to another.  Just as the Secretary's decision should not be set aside for not addressing an argument that was not clearly raised in the administrative proceedings, the district court should not be reversed for not addressing an argument that the Tribe failed to advance before it.  It appears that the Tribe waived its alternate proposal argument by failing to present it to the district court.

## III

Finally, I cannot agree with the majority's gratuitous comments on the merits of the Tribe's "alternate proposal" to close its Win-River Casino and open a casino on Strawberry Fields.  The panel is in accord that (1) the regulation is reasonable, (2) the Indian canon does not apply, and (3) there has been no unexplained change in agency policy.  These cover the primary issues raised by the Tribe.  Indeed, in its reply brief, the Tribe reiterates that it "has consistently challenged a very specific component of the Secretary's interpretation; the requirement set forth in 25 C. F. R. § 292.12(c)(2) that the tribe must not 'already be gaming on other lands.'"  Our agreement with the district court on these three issues should end this litigation, there is no need for further comment.

However, section IV of the majority opinion, after incorrectly accepting as fact both that the Tribe made an alternate proposal to the Department and that the district court's order contemplated that the Tribe sought to operate multiple casinos,[3] proceeds to offer questionable dicta. The majority recognizes that the regulation contains a prohibition against gaming on other lands, but then comments:

> The regulation is not clear, however, that the agency must also look to the date of the application to determine whether the tribe has satisfied the prohibition against gaming on other lands. While the regulation could be so interpreted, the agency has so far provided no reason why it should. Allowing a restored tribe to move a casino does not appear to conflict with the statutory purpose of ensuring parity among restored and established tribes.

Maj. at 17.

This approach is wrong on a number of fronts. First, it takes liberty with the regulation's language. The critical subsection reads: "the tribe submitted an application to take the land into trust within 25 years after the tribe was restored to Federal recognition and the tribe *is not gaming on other lands*." Why isn't the most natural reading of the subsection that the Secretary must look to the date of the application in determining whether the application was submitted within the 25 year period and whether the tribe "*is not gaming on other*

---

[3] The majority states that: "The district court did not consider the Tribe's alternative offer and construed its application as if it necessarily contemplated the operation of multiple casinos."

*lands*?" The subsection directs the Secretary to look at what is happening, not what might happen in the future.

Second, this is the Secretary's position as set forth in the December 22, 2010 decision. The Secretary's brief reasserts that "the regulations are clear, and contain no provision for an expression of future intent with an undefined time frame." There is no doubt that throughout the proceedings the Tribe has operated the Win-River Casino. Thus, according to the Secretary, whether the Tribe intended to close the Win-River Casino if it prevailed on its application was "irrelevant." The Department's interpretation of its own regulation is controlling because it is not plainly erroneous or inconsistent with the statute. *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (holding that a Secretary's interpretation of a Department's regulation is controlling unless plainly erroneous or inconsistent with the regulation). Indeed, the Tribe has not argued, and the majority has not held, otherwise. Moreover, this is not a situation where the Secretary has changed his position during litigation or offered a *post hoc* rationalization. *See Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166–67 (2012). Rather, the Secretary has consistently given *"is not gaming on other lands"* its ordinary meaning. It is the Tribe that on appeal advances a new proposed definition of the term.

Third, the majority's approach places the cart before the horse. I agree with the majority that "the Secretary reasonably implemented the restored lands exception," and that under the Administrative Procedure Act, the Secretary's "interpretation is owed deference so long as it is reasonable." Maj. at 12 (citing *United States v. Mead Corp.*, 533 U.S. 218, 229 (2001); and *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 845 (1984)). We have further

held that "[u]nder the APA, we may only set aside an agency action if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *MacClarence v. United States Environmental Protection Agency*, 596 F.3d 1123, 1130 (9th Cir. 2010) (internal quotation marks and citation omitted). The Tribe has the burden of showing that the Secretary's interpretation of the regulation is plainly erroneous, and the Secretary had no obligation to anticipate what the Tribe might argue on appeal. Here, the Secretary's interpretation is reasonable, as the majority essentially admits. Maj. at 17. The Tribe has failed to demonstrate that the Secretary's reading of "*is not gaming on other lands*" was arbitrary, capricious or an abuse of discretion.

Moreover, even if the Secretary's interpretation of "not gaming" was not the most reasonable reading of the subsection, it is at least sufficiently reasonable to place the burden of proving a different interpretation on the Tribe. However, the record shows that although the Tribe informed the Secretary of its willingness to move its casino, it never offered any arguments to the Secretary or the district court as to why its offer was, or should be, relevant to the interpretation of the regulation. Even the Tribe's passing argument on this issue in its brief to this court is devoid of any citation to case law or regulation.

Finally, the assertion that moving a casino "does not appear to conflict with the statutory purpose of ensuring parity among restored and established tribes" is dicta, unsupported by anything in the record, and possibly contrary to panel's reasoning for otherwise affirming the Secretary's decision. The Tribe wants to build the Strawberry Fields Casino because it would be bigger and presumably more profitable than the Win-River Casino. But wouldn't allowing

restored tribes, but not established tribes, to move their casinos to newly acquired land alter the balance between restored and established tribes?  Perhaps, if the Tribe's lands had never been confiscated, it might have built its casino at a better location in the first instance, but it is not clear why the Tribe's particular challenges are, or should be, relevant to the Secretary's interpretation of the regulation.  I am at a loss to explain how the majority can otherwise affirm the Secretary's decision but then suggest that the Tribe's intent to move its casino rather than operate a second casino might somehow change the Secretary's interpretation of the regulation.

## IV

If the Tribe wants to ask the Secretary to reconsider the December 22, 2010 decision on the basis that "*is not gaming on other land*" may, or should be, interpreted to allow a Tribe to move its casino from existing land to newly acquired land, it presumably may do so.  I express no opinion as to whether the Secretary should entertain, or grant, such a request. However, having unanimously determined that the Secretary's interpretation of "*is not gaming on other land*" is reasonable, we should not comment on the Tribe's belated offer to move its casino.  This is so because the Tribe did not fairly present its argument to the Secretary or to the district court.  Furthermore, the majority's dicta is contrary to the Secretary's reasonable interpretation of the regulation, which is entitled to deference, and the dicta is unsupported by facts or legal argument.  Accordingly, the majority's misguided championing of the Tribe's offer to move the casino misconceives the judiciary's review function under the Administrative Procedure Act, and is unlikely to produce any actual benefit for the Tribe.  Because we should limit our

opinion to our determination that the Secretary otherwise reasonably interpreted the regulation and denied the Tribe's application, I dissent from part IV of the opinion.